## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

ZACH SERVIS                                                                                      PLAINTIFF

v.                                                                      NO. *3:26 CV-584-DPJ ASH*

CITY OF JACKSON, MISSISSIPPI;
CHAIRMAN & MEMBERS OF THE CITY
COUNCIL (official capacity);
BRIAN GRIZZELL (official and individual capacity);          **DEFENDANTS**
VIRGI LINDSAY (individual capacity).                         **(JURY TRIAL DEMANDED)**

### VERIFIED COMPLAINT

Jackson's facially unconstitutional ordinance prohibiting "disparagement" and "personal, impertinent, or . . . abusive" speech at city council meetings is being unconstitutionally applied to protected speech critical of a public official. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

1. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically 42 U.S.C. § 1983.

2. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because it concerns the City of Jackson, Mississippi.

3. Plaintiff demands a trial by jury on all issues so triable.

4. Plaintiff Zach Servis is a citizen and resident of Jackson.

5. Defendant City of Jackson is a municipality subject to 42 U.S.C. § 1983.

6. Defendant Chairman and Members of the City Council are sued in their official capacity.

7. Defendants Brian Grizzell and Virgi Lindsay are also sued in their individual capacity for their actions in causing this ordinance to be unconstitutionally enforced against Servis.

1

FACTS (AS APPLIED)

**Campaign shirt and censorship**

8. On May 20, 2025, Plaintiff attended a City Council meeting wearing a "Zach Servis for Mayor of JXN" t-shirt. (Exhibit 1: Video conventionally filed, at 14:04)

9. This shirt was protected speech under the First Amendment.

10. When Plaintiff was recognized for public comment and stood at the podium to address the City Council, Defendants saw his shirt.

11. Defendants did not approve of the message on this shirt.

12. Defendant Lindsay told Plaintiff that he could not wear this shirt at the meeting, and that he could not speak at the meeting.

13. As a pretext for censoring this speech, Lindsay claimed this shirt was a violation of state law because this was "a polling place," referring to Miss. Code 23-15-895.

14. Under this statute "no candidate for an elective office . . . may post or distribute cards, posters or other campaign literature within one hundred fifty (150) feet of any entrance of the building wherein any election is being held." Miss. Code 23-15-895.

15. This statute is clearly inapplicable, both because Servis did not "post or distribute" anything, and City Hall was not a "building wherein any election is being held" at the time.

16. Although absentee ballots were being dropped off at City Hall during regular business hours, the office had closed and no such ballots were being received at the time.

17. This provision does not apply to receiving absentee ballots, since this is not "holding" an election

18. It does not apply to any time after polling or receipt of ballots is completed for the day.

19. Nonetheless, Plaintiff attempted to comply with Lindsay's instruction censoring him by voluntarily turning the shirt around so it would not face the City Council, and continuing with his public comments.

20. The councilmembers still did not permit Plaintiff to orally address the council.

21. Instead, Defendant Lindsay barred him from speaking

22. Defendant Grizzell instructed the Jackson Police Department to escort him out of the room.

23. Plaintiff was ejected and was prohibited from speaking on pain of criminal prosecution.

24. Plaintiff made comments in the media opposing this unconstitutional action and criticizing the Defendants.

25. These actions incensed the Defendants, who were determined to use any pretext to censor or hamper Plaintiff.

**"Disparage a city employee"**

26. On July 8, 2025, Plaintiff made comments about government misconduct at the City Council meeting. (Exhibit 2: Video conventionally filed, at 4:05)

27. Plaintiff described a scheme of voter intimidation in which poll workers had their pay withheld by city employees until the workers completed unsealed absentee ballots.

28. He also described election misconduct by the City Clerk, who refused to provide Servis with a Republican qualification packet for the mayoral election.

29. He stated that she had tried to prohibit any Republican from qualifying.

30. He asked that the council replace her as City Clerk.

3

31. He stated that she yelled at, berated, and racially discriminated against employees.

32. Throughout, his comments were calmly stated.

33. Throughout, his comments were based on his understanding of the truth - based on reasonable inquiry - of what a public figure (the City Clerk) was doing.

34. Defendant Grizzell then interrupted Servis and stated "Mr. Servis, I can't let you sit here and disparage a city employee. I encourage you to meet with Mayor Horhn and his staff to discuss your issues."

35. Servis reminded Grizell that he (Servis) was within his constitutional rights, but Grizell disagreed, insisting that Servis change the subject.

**Prohibiting "comments of a personal nature"**

36. On July 15, 2025, Defendant Grizzell stated at the meeting, before the public comment period began, that he would not allow "comments of a personal nature regarding individual members of the City Council or staff." (Exhibit 3, video conventionally filed, at 10:24)

37. In so doing, he was referring to municipal ordinance Sec. 2-71, *infra*.

38. His purpose was to chill speech critical of himself and his allies on the City Council.

39. He had a viewpoint discriminatory purpose in enforcing the ordinance.

40. His comments did chill such speech.

**Servis is not censored when he praises city employees.**

41. On July 29, 2025, Servis spoke out in praise of a city employee, naming the employee specifically and describing the employee's good work. (Exhibit 4, video conventionally filed, at 11:56)

4

42. When he did so, no one from the City Council interrupted him, called JPD to escort him out, threatened him for making "personal" remarks about employees, or otherwise made any effort to censor his speech.

**Servis would like to continue making critical remarks, but reasonably fears further censorship or criminal prosecution if he does.**

43. Servis wishes to engage in further protected speech of a similar nature.

44. Both Servis individually and the Foundation for Individual Rights and Expression (FIRE) writing on Servis's behalf have notified the Defendants that their actions and ordinances are unconstitutional restrictions on Servis's speech, identifying relevant legal authorities. (Exhibit 5, FIRE letters)

45. Servis has informed Defendants of his wish to engage in further speech.

46. Servis has sought assurances that he would not be subject to censorship or prosecution if he did so.

47. Defendants have made no response, and have thus refused to provide such assurances.

48. Given the history of excluding Servis from a meeting with police force, Servis therefore reasonably fears that if he makes such further efforts to engage in protected speech he will again be censored or subject to prosecution.

49. Defendants actions therefore chill the speech of Servis and other citizens of Jackson at City Council meetings.

FACTS (ORDINANCE ON ITS FACE)

50. The City of Jackson has adopted as its official policy and law the attached ordinance, Jackson, MS, Code of Ordinances, Ch. 2, Art. II, Div. 2, Sec. 2-71. (Exhibit 6)

5

51. This ordinance goes beyond reasonable "time, place and manner" restrictions to directly restrict the content of speech and discriminate based on viewpoint.

**"Reference to any personnel matter"**

52. It states that "no person shall address the council with reference to any personnel matter during any open meeting of the city council." Sec. 2-71(d).

53. This is a content-based restriction, since it selects one particular topic of public interest for censorship.

54. This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "reference" to "any personnel matter."

55. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

56. This is unconstitutionally overbroad.

57. By its terms, it would apply to issues such as the failure to discipline corrupt executive officials, and whether the City can afford raises for its employees, both of which are "personnel matters."

58. By its terms, it applies to "any personnel matter" at any employer. It therefore severely restricts discussion of ordinances or possible ordinances that would regulate employment, like pay, discrimination, retaliation, and whistleblower protections.

**"Derogatory remarks"**

59. In two places it forbids "derogatory remarks concerning councilmembers or anyone present in the council chamber." Sec 2-71(e), (f)

6

60. This is viewpoint discrimination, since it does not censor those who would praise councilmembers or others present in the council chamber, and singles out for censorship only those of a specific viewpoint.

61. This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "derogatory remark," and because it is not always possible to know who is and is not "present in the council chamber."

62. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

63. It permits any person to silence public criticism of their actions at council meetings by attending the meetings and invoking this rule.

64. This is unconstitutionally overbroad.

65. By its terms, it would apply to virtually any criticism of the government of the City of Jackson.

66. By its terms, it prohibits truthfully and calmly informing the council of misconduct by one of its members or employees.

67. By its terms, it prohibits expressing disagreement with any councilmembers' actions.

**"Irrelevant speaking"**

68. It forbids "irrelevant speaking." Sec 2-71(e).

69. This is unconstitutionally vague, since it is not sufficiently clear what would and would not be "irrelevant."

7

70. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

**"Personal, impertinent, or slanderous remarks"**

71. It forbids "personal, impertinent or slanderous remarks. " Sec 2-71(f).

72. This is viewpoint discrimination, since it does not censor those who would praise, and singles out for censorship only those of a specific viewpoint.

73. This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "personal, impertinent, or slanderous remark."

74. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

75. This is unconstitutionally overbroad.

76. By its terms, "personal remark" would apply to any criticism of anyone.

77. By its terms, "impertinent remark" would apply to any comment the councilmembers thought was insufficiently deferential to authority, or even expressed in a tone of voice that the councilmembers did not like.

**"Abusive, vulgar, or profane language"**

78. It forbids "abusive, vulgar, or profane language." Sec. 2-71(f)

79. This is viewpoint discrimination, since it does not censor those who would praise, and singles out for censorship only those of a specific viewpoint.

8

80. This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "abusive, vulgar, or profane" remark.

81. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

82. This is unconstitutionally overbroad, since many "abusive, vulgar, and profane" statements are protected speech.

**"Boisterous while addressing the council"**

83. It forbids being "boisterous while addressing the council." Sec. 2-71(f)

84. This is content based and viewpoint discrimination, since it does not censor those who would calmly express their views, and singles out for censorship only those who would express their emotions more effectively.

85. This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute being "boisterous."

86. By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

87. This is unconstitutionally overbroad, since many "boisterous" manners of speaking are encompassed within protected speech.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)

88. Plaintiff incorporates all paragraphs set forth elsewhere in this Complaint.

89. Under 42 U.S.C. § 1983, it is unlawful for any person acting under color of state law to violate the First Amendment of the U.S. Constitution.

90. Under the First Amendment, it is unlawful to restrict, censor, or retaliate against protected speech. Specifically, viewpoint and content-based restrictions must be narrowly tailored to a compelling governmental interest. Regulations on speech cannot be more vague or overbroad than necessary to serve that interest. And even where facially constitutional, rules cannot be applied in an unconstitutional manner to burden speech or discriminate against viewpoints or subject-matters more than necessary.

91. As described above, the Defendants' actions violate the U.S. Constitution.

92. As described above, the ordinance is unconstitutional both on its face and as applied to Servis's speech.

RELIEF REQUESTED

93. Plaintiff respectfully requests that this Court:

    a. Declare Jackson Code of Ordinances § 2-71 unconstitutional;

    b. Preliminarily and permanently enjoin Defendants from enforcing the ordinance;

    c. Declare that Defendants have violated Plaintiff's constitutional rights;

    d. Preliminarily and permanently enjoin Defendants from further violations of Plaintiff's constitutional right to make such remarks, including derogatory, personal, impertinent, or boisterous statements, or statements about personnel matters.

    e. Award nominal damages to Plaintiff;

    f. Award attorney fees to Plaintiff;

Respectfully submitted on August 7, 2026,

ZACH SERVIS, Plaintiff

/s/ Joel Dillard
Joel F. Dillard (MSB No. 104202)
Kevin Hanlon (MSB No. 106812)
*Counsel for Plaintiff*

OF COUNSEL:

JOEL F. DILLARD, P.A.
775 N. Congress St.
Jackson, MS 39202
Telephone: 601-509-1372
joel@joeldillard.com
kevin@joeldillard.com

## VERIFICATION

I, Zach Servis, declare under penalty of perjury that the foregoing is true and correct to

the best of my knowledge.

_Zach Servis (Aug 10, 2026 23:30:36 CDT)_          08/10/2026

Zach Servis                                        Date

11