

**FIRE**
Foundation for Individual
Rights and Expression

December 9, 2025

Jackson City Council
Jackson City Hall
219 S. President St.
Jackson, Mississippi 39201

*Sent via U.S. Mail and Electronic Mail (afoote@jacksonms.gov; tclay@jacksonms.gov; kstokes@jacksonms.gov; bgrizzell@jacksonms.gov; vhartley@jacksonms.gov; lashiat@city.jackson.ms.us; kparkinson@jacksonms.gov)*

Dear Council Members:

FIRE is disappointed not to have received a response to our October 7 letter concerning the Jackson City Council's censorship of resident Zach Servis and its unconstitutional prohibitions against "personal, impertinent, or slanderous remarks" and using "abusive, vulgar, or profane language" at Council meetings. As we explained, these provisions and the Council's enforcement of them against Servis violate the First Amendment, which protects speech by members of the public at government meetings.

FIRE again calls on the Council to revise these unconstitutional provisions without delay. We would be pleased to work with the Council to ensure the city's Code of Ordinances complies with the First Amendment while preserving the Council's ability to run orderly meetings. We respectfully request a substantive response to this letter no later than December 16, 2025.

Sincerely,

Aaron Terr
Director of Public Advocacy

Encl.

**EXHIBIT 5**



October 7, 2025

Jackson City Council
Jackson City Hall
219 S. President St.
Jackson, Mississippi 39201

*Sent via U.S. Mail and Electronic Mail (afoote@jacksonms.gov; tclay@jacksonms.gov; kstokes@jacksonms.gov; bgrizzell@jacksonms.gov; vhartley@jacksonms.gov; lashiat@city.jackson.ms.us; kparkinson@jacksonms.gov)*

Dear Council Members:

The Foundation for Individual Rights and Expression (FIRE), a nonpartisan nonprofit that defends free speech nationwide, is concerned by the Jackson City Council's unconstitutional censorship of public comments. We call on the Council to bring its policies and practices into compliance with the First Amendment.

Our concerns arise from multiple meetings where the Council curtailed resident Zach Servis's participation during public comment or justified unconstitutional speech restrictions:[1]

- May 20, 2025: Servis approached the podium wearing a shirt reading "Zach Servis for Mayor of JXN." Then-Councilwoman Virgi Lindsay asserted campaign apparel could not be worn in City Hall because it was serving as a polling place. Servis entered a nearby office to turn his shirt around as Lindsay told him it was her office and he did not have permission to enter it. Moments later, when Servis emerged with his shirt reversed, Lindsay said he was barred from speaking and ordered him to leave, and Councilman Brian Grizzell called on a Jackson police officer to escort him out.[2]

- July 8, 2025: While Servis criticized the Municipal Clerk's performance—including her oversight of elections and interactions with other city staff—and urged the Council to

---

[1] The narrative in this letter represents our understanding of the pertinent facts, but we appreciate that you may have additional information to offer and invite you to share it with us.

[2] CITY OF JACKSON PEG NETWORK, *Regular City Council Meeting May 20, 2025*, at 14:04 (YouTube, May 21, 2025), https://youtu.be/dAyp_ROtsZk?si=dhlDBGRn2Ho8_XYI&t=844; Charlie Drape, *Jackson mayoral hopeful removed from meeting over campaign shirt. Now he's threatening a lawsuit*, CLARION LEDGER (May 21, 2025), https://www.clarionledger.com/story/news/local/2025/05/21/jackson-ms-mayoral-candidate-zach-servis-escorted-zach-servis-out-of-city-council-meeting/83741997007.

select a different clerk, Councilman Grizzell interrupted: "Mr. Servis, I can't let you sit here and disparage a city employee." Servis moved on to another topic.[3]

- July 15, 2025: Councilman Grizzell announced that "comments of a personal nature regarding individual members of the City Council or staff" would not be permitted.[4]

- July 29, 2025: Servis explained that the ordinance invoked by Council members to restrict criticism of city employees is unconstitutional. He also commended a city employee for meeting with a group of small business owners, and Councilman Brown for working to get water to residents of an apartment complex. Afterward, Councilman Stokes acknowledged Servis's cited cases "may be on point" but insisted that until the ordinance is successfully challenged, speakers "must follow the law."[5]

Most of the above actions and restrictions appear rooted in the Jackson Code of Ordinances, which prohibits public commenters from making "personal, impertinent, or slanderous remarks" or using "abusive, vulgar, or profane language."[6] This provision—and the Council's enforcement of it against Servis—violates the First Amendment, which protects speech by members of the public at government meetings.[7]

Public comment periods are, at minimum, limited public forums, where the government may impose only viewpoint-neutral restrictions that are reasonable in light of the forum's purpose.[8] The Council may, for example, adopt reasonable time limits or require that comments relate generally to city business. But it may not restrict comments because they are critical of city officials or employees, or "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[9]

The ordinance's restrictions on "personal," "impertinent, "slanderous," and "abusive" language are viewpoint-discriminatory.[10] They "impermissibly target[] speech unfavorable to

---

[3] CITY OF JACKSON PEG NETWORK, *Special City Council Meeting July 8, 2025*, at 16:41 (YouTube, July 14, 2025), https://www.youtube.com/watch?v=vAjgIaf1lAs&t=1001s.

[4] CITY OF JACKSON PEG NETWORK, *Regular City Council Meeting June 15, 2025*, at 4:05 (YouTube, July 16, 2025), https://www.youtube.com/watch?v=dWSQPiuHnn0&t=245s. The video's title mistakenly dates the meeting to June 15.

[5] CITY OF JACKSON PEG NETWORK, *Regular City Council Meeting July 29, 2025*, at 10:25 (YouTube, July 29, 2025), https://www.youtube.com/watch?v=Rt-uByWArDc&t=625s.

[6] JACKSON, MS, CODE OF ORDINANCES, ch. 2, art. II, div. 2, § 2-71(f) (2025), https://library.municode.com/ms/jackson/codes/code_of_ordinances?nodeId=COOR_CH2AD_ARTIICICO _DIV2ME_S2-71SPLIPUCOCOCHCO.

[7] *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rels. Comm'n*, 429 U.S. 167, 174–76 (1976).

[8] *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

[9] *Id.*

[10] While the First Amendment does not protect defamatory statements, the ordinance fails to define "slanderous" and expressly tie it to the elements of defamation. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Even if it did, whether a remark is defamatory is a complex, fact-intensive legal question—turning on issues like opinion versus verifiable fact, the speaker's state of mind, and the status of the subject of the

or critical of" government officials "while permitting other positive, praiseworthy, and complimentary speech."[11] As courts have consistently emphasized, the Council cannot allow city officials and employees to "be praised but not condemned."[12]

A recent federal court decision reaffirmed these principles in striking down rules prohibiting "personal attacks" and "derogatory" comments at library board meetings.[13] In that case, a speaker accused board members of "grooming" children and of "hateful and prejudicial actions."[14] However inflammatory, the speech was protected as it tied to criticism of board policy and officials' public statements related to library business.[15] Likewise, Servis's criticism of the Municipal Clerk addressed her performance of official duties and concerned the Council's authority to confirm clerk appointments. His remarks lay at the heart of the First Amendment's protection, and the Council lacked any constitutional basis to suppress them.[16] The fact that Servis was allowed to praise city officials and employees without interruption during his July 29 comments further confirms that the ordinance discriminates based on viewpoint, both facially and in its enforcement.

The Council's blanket bans on "vulgar" and "profane" language fare no better under the First Amendment. As written, these restrictions even forbid a speaker from quoting "vulgar" or "profane" language used by a city official. It is a "bedrock principle underlying the First Amendment" that officials cannot restrict speech simply because some find it "offensive or

---

remark—that courts must address under constitutionally prescribed standards if the allegedly defamed individual decides to sue. It is not a determination for the Council to make on the spot in its own discretion.

[11] *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1350 (N.D. Ga. 2022); *see also Ryan v. Grapevine—Colleyville Indep. Sch. Dist.*, No. 4:21-cv-1075-P, 2023 U.S. Dist. LEXIS 41478, at *17 (N.D. Tex. Mar. 13, 2023) (school district public comment protocols stating "attacks of a personal nature ... will not be allowed or tolerated" constituted evidence of viewpoint discrimination).

[12] *Monroe v. Hous. Indep. Sch. Dist.*, 794 F. App'x 381, 383 (5th Cir. 2019) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017)); *see also Moms for Liberty — Brevard Cnty. v. Brevard Cnty. Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024) (restrictions on "abusive," "personally directed," and "obscene" public comments violated the First Amendment; enforcement of "abusive" comments ban against those negatively characterizing individuals or groups unconstitutionally discriminated against speech based on viewpoint); *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894–95 (6th Cir. 2021) (bans on "antagonistic," "abusive," and "personally directed" public comments violated First Amendment as effectuating "impermissible viewpoint discrimination" by prohibiting nondisruptive speech "purely because it disparages or offends").

[13] *Mejia v. Lafayette Consol. Gov't*, No. 6:23-CV-00307, 2025 U.S. Dist. LEXIS 52868, at *24–25 (W.D. La. Mar. 20, 2025).

[14] *Id.* at *7–8.

[15] *Id.* at *24.

[16] *See Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (political speech is "an essential mechanism of democracy, for it is the means to hold officials accountable to the people" and for the people "to make informed choices among candidates for office"); *Virginia v. Black*, 538 U.S. 343, 365 (2003) (political speech is "at the core of what the First Amendment is designed to protect").

4

disagreeable."[17] Accordingly, courts have "generally held that outright prohibitions on profane language or profanity are not allowed."[18]

In the landmark case *Cohen v. California*, the Supreme Court held the First Amendment protected the right to wear a jacket reading "Fuck the Draft" in a public courthouse.[19] The Court held that "so long as the means are peaceful, the communication need not meet standards of acceptability.[20] As another court observed when striking down a ban on "profane" statements at school board meetings: "Had the Board qualified the language to restrict profane remarks or profanity *that was actually disruptive* of the Board's business, that might have been a different story. But it did not, and as written, it cannot stand."[21]

The ordinance's restrictions are also unconstitutionally vague. Speech regulations must give fair warning about what is prohibited and "provide explicit standards for those who apply them" to prevent "arbitrary and discriminatory enforcement."[22] Even in a limited public forum, where "some degree of discretion in how to apply a given policy is necessary, 'that discretion must be guided by objective, workable standards' to avoid the moderator's own beliefs shaping his or her 'views on what counts' as a policy violation."[23] The ordinance fails this test because its lack of definitions for key terms invites arbitrary enforcement based on officials' subjective judgments.

Lastly, the Council may not eject a speaker merely for wearing a "campaign shirt," especially when that action is based on an unwritten rule and a misunderstanding of state law.[24] Even if Servis's shirt qualified as "campaign literature" under Mississippi Code § 23-15-895—which bans the posting of campaign materials "within one hundred fifty (150) feet of any entrance of the building wherein any election is being held"—no voting was underway at City Hall during the meeting. The Mississippi Secretary of State's office confirmed that "the 150-foot polling

---

[17] *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

[18] *Mama Bears*, 642 F. Supp. 3d at 1355 (citing as examples *Acosta v. City of Costa Mesa*, 718 F.3d 800, 813 (9th Cir. 2013) ("§ 2-61 prohibits the making of 'personal, impertinent, profane, insolent or slanderous remarks.' That, without limitation, is an unconstitutional prohibition on speech"); *Kalman v. Cortes*, 723 F. Supp. 2d 766, 798–99 (E.D. Pa. 2010) (restriction on "'profanity,' without more, is not a valid reason for suppressing speech")).

[19] 403 U.S. 15 (1971).

[20] *Id.* at 25. The Court also noted that if governments were allowed to "forbid particular words," they "might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views." *Id.* at 26.

[21] *Mama Bears*, 642 F. Supp. 3d at 1356 (emphasis in original).

[22] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[23] *Marshall v. Amuso*, 571 F. Supp. 3d 412, 425–26 (E.D. Pa. 2021) (quoting *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 21–22 (2018)). This "need for specificity is especially important where . . . the regulation at issue is a content-based regulation of speech," as vagueness has an "obvious chilling effect on free speech." *Id.* (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 266 (3d Cir. 2002)).

[24] We understand that Servis also entered a council member's office without permission, though the extent to which that factored into the decision to remove him from the meeting is unclear. Our argument here is concerned solely with any unwritten policy the council has regarding campaign-related speech or materials.

place rule is only in effect while the polling place is open."[25] Moreover, no duly adopted Council rules appear to restrict campaign-related expression. Any informal, unwritten policy to that effect provides inadequate notice and invites arbitrary enforcement.[26] In any event, a categorical ban on apparel supporting political candidates—even when City Hall is not serving as a polling place and when the speaker's public comments are germane to city business—would be unreasonable. In such circumstances, the clothing violates no state law, and its silent, passive expression cannot plausibly be deemed disruptive.

**The Council's restrictions on public comment violate the First Amendment and expose the City of Jackson to costly, time-consuming litigation. FIRE strongly urges the Council to correct these constitutional defects without delay.**

We stand ready to assist—at no cost—in crafting policies that respect constitutional limits and preserve order at meetings, as we have done with other local governments.[27] Please respond by October 21, 2025, confirming the steps the Council will take to reform its public comment policies.

Sincerely,

Aaron Terr
Director of Public Advocacy

---

[25] Drape, *supra* note 2.

[26] *Grayned*, 408 U.S. at 108.

[27] *See, e.g.*, Carrie Robison, *VICTORY: Michigan city recognizes First Amendment right to 'demean' government officials*, FIRE (Jan. 17, 2024), https://www.thefire.org/news/victory-michigan-city-recognizes-first-amendment-right-demean-government-officials.