**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ZACH SERVIS**                                                                 **PLAINTIFF**

**v.**                                                              **NO. 3:26-cv-00584-DPJ-ASH**

**CITY OF JACKSON, MISSISSIPPI;**
**CHAIRMAN & MEMBERS OF THE JACKSON**
**CITY COUNCIL (official capacity);**
**BRIAN GRIZZELL (official and individual capacity);**
**VIRGI LINDSAY (individual capacity).**                   **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

The government cannot censor public comments it disagrees with.[1] This is true regardless of whether a neutral pretext is stated for it.[2] It is even worse where the city ordinance at issue - both facially and as applied - discriminates based on viewpoint by "provid[ing] that public officials could be praised but not condemned."[3] This has been the well-established law for years.[4]

Yet that is precisely what happened in this case. Plaintiff asks that the unconstitutional ordinance be enjoined, and that the Defendants be specifically enjoined from saying or doing anything to suggest that it will not allow public comments at its meetings which are critical of councilmembers and staff.

---

[1] *Robinson v. Hunt Cnty., Tex.*, 921 F. 3d 440, 451 (5th Cir. 2019).
[2] *Mejia v. Lafayette Consol. Gov't*, No. 6:23-CV-00307, 2025 U.S. Dist. LEXIS 52868, at n. 95 (W.D. La. Mar. 20, 2025).
[3] *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (finding unconstitutional a law that restricted speech that "disparages" a person) (discussed in *Monroe v. Houston ISD*, 794 F. Appx 381, 383 (5th Cir. 2019))
[4] *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017). *See Mejia*, *supra* (denying qualified immunity)

FACTS

The facts are stated in the verified complaint, which is incorporated here by reference. To summarize: Plaintiff Zach Servis was prohibited from speaking in the public comment period and kicked out of a Jackson City Council meeting for wearing a campaign shirt. In a subsequent meeting, when he commented on election corruption and racial discrimination by the City Clerk during the public comment period, he was interrupted and prohibited from making statements that would "disparage a city employee." At the next meeting, Defendants chilled speech in advance by warning before the comment period began that "comments of a personal nature regarding individual members of the City Council or staff" were prohibited. Meanwhile, Defendants freely permitted complimentary comments.

Defendants relied on a city ordinance - Section 2-71 - to censor citizens' (including Servis's) speech. This ordinance forbids "reference to any personnel matter," "derogatory remarks concerning councilmembers or anyone present in the council chamber," "irrelevant speaking," "personal, impertinent or slanderous remarks," "abusive, vulgar, or profane language," and "boisterous" speech during public comment at City Council meetings.

Both Servis and the Foundation for Individual Rights and Expression (FIRE) have notified Defendants that this is unconstitutional. Servis wishes to continue exercising his rights. Servis sought assurances that Defendants would not censor or prosecute him for doing so. Defendants have not provided any such assurances and their past behavior and statements indicate that they intend to continue. This has chilled the speech of Jackson's citizens, including Servis, causing irreparable harm.

2

DISCUSSION

In determining whether to enter a preliminary injunction, four factors are considered: (1) whether a substantial likelihood exists that the plaintiff will prevail on the merits, (2) whether the injunction is necessary to prevent irreparable harm, (3) whether the threatened injury to the plaintiff outweighs the harm an injunction might do to Defendant, and (4) whether granting a preliminary injunction will disserve the public interest. *Robinson v. Hunt Cnty., Tex.*, 921 F. 3d 440, 451 (5th Cir. 2019). All four factors support an injunction here.

## I.   There is a substantial likelihood of success.

There is adequate evidence at this preliminary stage that Defendants policies and practices are unconstitutional both as applied and facially. There is a likelihood of success concerning: A) viewpoint discrimination; B) vagueness; and C) overbreadth.

### A.  Viewpoint discrimination

"Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson v. Hunt Cnty.*, 921 F. 3d 440, 447 (5th Cir. 2019). Likewise, it is viewpoint discrimination where the rules "provid[e] that public officials could be praised but not condemned." *Monroe v. Houston ISD*, 794 F. Appx 381, 383 (5th Cir. 2019) (quoting *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017)). That is precisely what happened here.

#### 1.  The government cannot silence speech because it expresses a critical or offensive viewpoint.

Viewpoint censorship violates perhaps the most fundamental free speech principle in American jurisprudence:

> It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. . . . Discrimination against speech because of its message is presumed to be unconstitutional. . . . When the

3

> government targets not subject matter, but particular views taken by speakers on a subject, the violation of [free speech rights] is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828-89 (1995). This includes otherwise "unprotected" speech. The government still may not engage in viewpoint discrimination even within traditionally unprotected categories of speech such as "fighting words." *RAV v. St. Paul*, 505 U.S. 377, 381-86 (1992). In *Schacht v. United States*, 398 U.S. 58 (1970), for example, the Court struck down a statute permitting actors to wear a military uniform in a theater or motion picture production only "if the portrayal does not tend to discredit that armed force." The Court noted that, although a total prohibition would be valid, a prohibition sensitive to the viewpoint of speech could not stand.

In *Iancu v. Brunetti*, 588 U.S. 388, 390 (2019), the Court held that not even trademarks that were "immoral" or "scandalous" could be restricted, since this was a viewpoint discriminatory standard. As another example, consider *Morgan v. Swanson*, in which the *en banc* Fifth Circuit held that it was viewpoint discrimination to prohibit elementary school students from distributing religious literature at school. *Morgan v. Swanson*, 659 F.3d 359, 401-404 (5th Cir. 2011) (Elrod, J., speaking for the majority of the *en banc* court on this question). Even in prisons, the kind of discrimination represented by this policy is unconstitutional. *Procunier v. Martinez*, 416 U. S. 396, 416 (1974) (striking down rule that allowed censorship of outgoing prison mail that "unduly complain" or "magnify grievances"). This includes the use of profane language. *Cohen v. California*, 403 U.S. 15 (1971) (recognizing a First Amendment right to wear a jacket reading "Fuck the Draft" in a public courthouse).

4

Thus, regardless of the forum - whether it is public, limited, non-public, or completely private - the government simply cannot regulate private citizens' speech based on viewpoint. *Monroe v. Houston ISD*, 794 F. Appx 381, 383 (5th Cir. 2019) (viewpoint discrimination is "a clearly established violation of the First Amendment in any forum"). This principle therefore applies to public comment at public government meetings, as the Supreme Court held in *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp. Rels. Comm'n*, 429 U.S. 167, 174–76 (1976). It is "beyond debate that the law prohibits viewpoint discrimination in a limited public forum." *Heaney v. Roberts*, 846 F. 3d 795, 801 (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)).

For example, in *Robinson v. Hunt County, Tex.*, 921 F. 3d 440 (5th Cir. 2019), the sheriff deleted critical comments from his department's Facebook page, but allowed and encouraged positive comments. This policy was applied to the plaintiff in that case, who had posts deleted and was banned from commenting on the page. The Fifth Circuit held that this was unconstitutional viewpoint discrimination. The pleadings noted that it was done by the policymaker (the sheriff) and pursuant to policy. The Fifth Circuit reversed dismissal of the declaratory judgment claim, and vacated and remanded the denial of a preliminary injunction.

### 2.  Cases specifically about disparaging individuals in public comments at government meetings.

This principle has been applied repeatedly (and consistently) in this Circuit and elsewhere in the context of public government meetings such as city councils, school boards, library boards, and others where there is a "public comment" period.

For example, in *Mejia v. Lafayette Consol. Gov't*, No. 6:23-CV-00307, 2025 U.S. Dist. LEXIS 52868, (W.D. La. Mar. 20, 2025), there was public controversy about a library system's classification and removal of books it deemed offensive or inappropriate for children -

particularly on LGBTQ topics. (*Cf. Little v. Llano County*, 138 F.4th 834 (2025)) One plaintiff in the *Mejia* case (Brevis) had made comments specifically criticizing by name particular members of the Board, comparing them to members of the White Citizen Council and describing them as "evil" for opposing LGBTQ events and books. Each time she criticized someone by name, she was ruled "out of order" and after the third time was escorted from the room by law enforcement officers.

Thereafter, the library board publicly posted a law that prohibited disturbing the peace, and stated that future comments of this sort would also lead to removal of the speaker. The library board stated that it would enforce its rules, which explicitly prohibited "debate or confrontation" or "derogatory comments about any person." The second plaintiff (Mejia) alleged that she wanted to make comments similar to Brevis's but was chilled and deterred from doing so by the library board's various rules and actions. The court denied a motion for qualified immunity on both plaintiffs claims.

The court noted that, under Fifth Circuit precedent, the public comment periods of government meetings are a "limited public forum." *Id.* at n. 74-75 (citing *Fairchild v. Liberty Indep. Sch. Dist*, 597 F.3d 747, 759 (5th Cir. 2010). It then ruled that there was a triable question of viewpoint discrimination because: 1) the Board's policy against "debate or confrontation" and "derogatory comments" appeared to be viewpoint discriminatory in itself, since "giving offense is a viewpoint"; and 2) regardless, the history of Board meetings showed discriminatory enforcement of the rules to prohibit only comments critical of the Board and not comments supporting the Board. It denied qualified immunity because this law was well established under *Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017).

6

In *Heaney*, the plaintiff had registered to speak during the time allowed for public comment during a Jefferson Parish Council meeting. Before his allotted time expired, Heaney was cut off by the council's presiding officer, Christopher Roberts, who accused Heaney of attempting to contradict and "to berate" the parish attorney. Roberts ultimately had Heaney removed from the meeting, stating "I'm going to ask that you be removed because you're being hostile so if you would please exit." This stated a fact question as to whether Roberts actions were viewpoint-based or whether it was based on a reasonable viewpoint-neutral restriction. According to the court, "if Roberts acted with improper motive, he violated Heaney's clearly established First Amendment right to be free from viewpoint discrimination in a limited public forum."

And in *Monroe v. Houston ISD*, 794 F. Appx 381, 383 (5th Cir. 2019), the Fifth Circuit reversed dismissal of a case in which a citizen was censored for engaging in two extremely profane and possibly threatening rants. The court noted the evidence of viewpoint discrimination in that the Board allowed "that public officials c[an] be praised but not condemned" which is "a clearly established violation of the First Amendment in any forum."

Many other cases are in accord. *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1350 (N.D. Ga. 2022); *Moms for Liberty - Brevard Cnty. v. Brevard Cnty. Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024) ("abusive," is viewpoint based); *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 894–95 (6th Cir. 2021) (bans on "antagonistic," "abusive," and "personally directed" public comments violated First Amendment as effectuating "impermissible viewpoint discrimination" by prohibiting nondisruptive speech "purely because it disparages or offends").

### 3.  Viewpoint discrimination in this case

The viewpoint discrimination in this case is evident.

First, on its face, the ordinance is viewpoint discriminatory because it singles out for prohibition "derogatory remarks concerning councilmembers" as well as "personal, impertinent or slanderous remarks," "abusive, vulgar, or profane language," and "boisterous" speech. This is precisely the kind of policy language the courts have consistently held is viewpoint discriminatory.

Second, the policy was specifically invoked to prevent Plaintiff from criticizing the city clerk on topics that were certainly pertinent to the business of the meeting - whether to reappoint the clerk - and doing so in a calm, non-disruptive manner, as the video shows. This demonstrates that the sole purpose of invoking the policy was to censor this viewpoint.

Third, the repeated reminders about this ordinance made in council meetings after this incident demonstrate a continuing intent to discriminate based on viewpoint.

Fourth, comments praising city employees by name were permitted, with no interruption or effort to silence the speaker.

Fifth, when the council previously ejected Plaintiff using the "campaign literature" rule because of his shirt, it did so knowing this was pretextual, since there was no polling and the office was not open even to receive absentee ballots at the time. This shows the true reason was disagreement with Plaintiff's message on his shirt.

Sixth, the use of law enforcement to forcibly prevent Plaintiff from speaking reflects an intent to chill the exercise of free speech.

This viewpoint discrimination is unconstitutional and should be enjoined.

### B. The policies are vague.

In addition and alternatively, the ordinance is unconstitutional because it is vague. As a prominent commentator has noted, "courts are particularly troubled about vague laws restricting speech out of concern that they will chill constitutionally protected speech." Erwin Chemerinsky,

8

*Constitutional Law: Principles and Policies* § 11.2.2 (2d ed.) (2002). Vague rules threatening punishment "deter [free speech] almost as potently as the actual application of sanctions." *NAACP v. Button*, 371 U.S. 415, 433 (1963). In *Button*, the Supreme Court further stated that "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Id*. For example, *In Moms for Liberty, supra*, the court held that a restriction on "personally directed" comments was unconstitutionally vague.

As such, these ordinances are unconstitutional for vagueness. As spelled out in the verified complaint, the restriction on "any personnel matter" is a content-based restriction, since it selects one particular topic of public interest for censorship. It is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "reference" to "any personnel matter." In two places it forbids "derogatory remarks concerning councilmembers or anyone present in the council chamber." Sec 2-71(e), (f). This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "derogatory remark," and because it is not always possible to know who is and is not "present in the council chamber." It forbids "irrelevant speaking." Sec 2-71(e). This is unconstitutionally vague, since it is not sufficiently clear what would and would not be "irrelevant." It forbids "personal, impertinent or slanderous remarks. " Sec 2-71(f). This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "personal, impertinent, or slanderous remark." It forbids "abusive, vulgar, or profane language." Sec. 2-71(f). This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute making a "abusive, vulgar, or profane" remark. It forbids being "boisterous while addressing the council." Sec. 2-71(f). This is unconstitutionally vague, since it is not sufficiently clear what would and would not constitute being "boisterous."

9

By empowering the Council President and any majority of the councilmembers to determine - without any check or oversight - what is and is not within the prohibition, it can serve as a cover for invidious censorship.

### C.  The policies are overbroad.

The overbreadth doctrine is regularly used to invalidate rules which encompass both protected and unprotected speech, where they "[encompass] a substantial number of unconstitutional applications judged in relation to the statute's plainly legitimate sweep." *Seals v. McBee*, 898 F. 3d 587, 593 (5th Cir. 2018) (quotations and citations omitted); *US v. Stevens*, 559 U.S. 460 (2010). In *Seals*, for example, a rule proscribing "threats" to a police officer was found overbroad. Although "true threats" of bodily harm are unprotected, the plain statutory terms also encompassed protected "threats" such as the threat to engage in litigation or boycotts, and was therefore unconstitutionally overbroad.

In this case, likewise, it is clear that the ordinance "encompasses a substantial number of unconstitutional applications judged in relation to the statute's plainly legitimate sweep." *Id.*[5] By its terms, it would apply to issues such as the failure to discipline corrupt executive officials, and whether the City can afford raises for its employees, both of which are "personnel matters." By its terms, it applies to "any personnel matter" at any employer. It therefore severely restricts

---

[5] Defendants may attempt to articulate a limited interpretation of these policies and ask this Court to defer. These efforts must be rejected: "[T]he First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *U.S. v. Stevens*, *supra*. And "a limiting construction" can be used "only if it is readily susceptible to such a construction." *Id.* Otherwise, there would be no "incentive to draft a narrowly tailored law in the first place." *Id.* If Defendants actually meant this policy in a more narrow and tailored way, it would have simply voted to replace this policy with a narrower one at any of its Board meetings since it was notified of the unconstitutionality of this rule many months ago. It has not. It is clear that Defendant means to continue unconstitutionally silencing people unless and until it is enjoined by this Court.

discussion of ordinances or possible ordinances that would regulate employment, like pay, discrimination, retaliation, and whistleblower protections.

The prohibition of "derogatory remarks," by its terms, would apply to virtually any criticism of the government of the City of Jackson. By its terms, it prohibits truthfully and calmly informing the council of misconduct by one of its members or employees. By its terms, it prohibits expressing disagreement with any councilmembers' actions. By its terms, "personal remark" would apply to any criticism of anyone. By its terms, "impertinent remark" would apply to any comment the councilmembers thought was insufficiently deferential to authority, or even expressed in a tone of voice that the councilmembers did not like. This is unconstitutionally overbroad, since many "abusive, vulgar, and profane" statements are protected speech. This is unconstitutionally overbroad, since many "boisterous" manners of speaking are encompassed within protected speech.

In short, taken together, this ordinance is unconstitutional because it is overbroad, and it should be enjoined.

II.    **Plaintiff will suffer irreparable harm if this Court does not grant this motion. Defendants will suffer no harm if this motion is granted, and prohibiting enforcement of unconstitutional policies serves the public interest of the people of Mississippi.**

The analysis under the second, third and fourth prongs of the preliminary injunction test is substantially simplified in First Amendment cases. Under Fifth Circuit caselaw, plaintiffs meet these prongs for a preliminary injunction by showing only that they suffered a constitutional injury. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (observing that the irreparable injury requirement automatically follows from such a showing because "the loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury" (cleaned up)); *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (explaining that when

evaluating the public interest factor, "[t]he government's and the public's interests merge when the government is a party"); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (noting that "it is always in the public interest to prevent the violation of a party's constitutional rights" (internal quotation omitted)). "'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" *Opulent Life Church v. City of Holly Springs*, 697 F. 3d 279, 295 (5th Cir. 2021) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995))). *See also Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Speech-restricting actions like this cause irreparable harm in light of the "chilling effect" they have on the exercise of speech rights. *E.g. Cuivello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) ("An ordinance need not be enforced against a speaker to pose a threat to his free speech rights. [Plaintiff] continues to restrain his own speech under the threat that Chapter 8.56 will be enforced against him. This chill on his free speech rights . . . constitutes irreparable harm." (citations omitted)).

Every day that these unconstitutional policies are in place is another day that Servis and the citizens of Jackson cannot confront the City Council with any criticism at public meetings. This is irreparable harm. The government suffers no harm if a motion requiring it to follow the Constitution is granted. Facing criticism is not a cognizable harm under the Constitution: the government is supposed to be subject to criticism, and this is not a legitimate basis to avoid an injunction. Thus, the balance of interests favors an injunction.

**III.    No injunction bond should be required.**

Finally, there is the issue of the Rule 65 injunction bond. The requirement should be waived. As stated in *Mama Bears*, *supra*, at 1361, "There is no evidence of risk of monetary loss to Defendants from not enforcing certain of the provisions outlined in the Board's public participation policy at Board meetings. And as explained earlier, the preliminary injunction protects First Amendment rights and vindicates the public interest. Accordingly, the Court finds that waiver of the Rule 65(c) security requirement is appropriate here."

CONCLUSION

For these reasons, this honorable Court should grant this motion and enter a preliminary injunction stating as follows:

- It is ORDERED that Defendants shall not interrupt, eject, or otherwise disrupt the speech of the Plaintiff in public comments at City Council meetings, except as necessary to enforce the neutral limitations in Jackson, MS, Code of Ordinances, Ch. 2, Art. II, Div. 2,  Sec. 2-71 (b) and (c).

- It is ORDERED that Defendants shall not enforce the following subsections of Jackson, MS, Code of Ordinances, Ch. 2, Art. II, Div. 2,  Sec. 2-71:

    - 2-71(d)

    - 2-71(e)

    - 2-71(f)

- It is ORDERED that Defendants shall not attempt to silence, interrupt, eject, prosecute, or otherwise censor any person making public comments at City Council meetings based on the viewpoint expressed or the contents of their speech.

- It is ORDERED that, before each public comment period in meetings taking place while this Order is in effect, the Chairman shall state the following to the public: "Pursuant to a federal court order, we will not silence, interrupt, eject, prosecute, or otherwise censor any person making public comments at City Council meetings based on the viewpoint expressed or the contents of their speech."

- Notwithstanding this Order, Defendants may remove from the chamber any person whose conduct represents a bona fide threat to persons or property.

Alternatively, if an injunction of all these portions of the ordinance is inappropriate - or if only the as-applied challenge has merit - then Plaintiff seeks an injunction tailored to the constitutional issues which the Court identifies as substantially likely to succeed on the merits.

Respectfully submitted on August 12, 2026,

*/s/ Joel Dillard*                                ,
Joel Dillard (MSB 104202)
JOEL F. DILLARD, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372, ext. 2
joel@joeldillard.com

14